IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DENISE MARIE BEAR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK BISIGNANO,[1] ) <br> COMMISSIONER OF SOCIAL SECURITY ) <br> ADMINISTRATION, ) <br> ) <br> Defendant. ) | Case No. 2:25-cv-00001 <br> Judge Frensley |

**MEMORANDUM OPINION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 10. Plaintiff has filed an accompanying Memorandum and other supporting documents. Docket Nos. 10-1 through 10-4. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 12. Plaintiff has filed a Reply. Docket No. 13.

For the reasons stated below, the undersigned orders that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Frank Bisignano was sworn in as the Commissioner of Social Security in May 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit.

1

# I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on October 3, 2021, alleging that she had been disabled since September 9, 2021, due to migraines, hip pain, arm pain, and depression. *See, e.g.,* Docket No. 9 ("TR"), p. 69. Plaintiff's application was denied both initially (TR 69–72) and upon reconsideration (TR 82–92). Plaintiff subsequently requested (TR 110–111) and received (TR 41–68) a hearing. Plaintiff's hearing was conducted on November 1, 2023, by Administrative Law Judge ("ALJ") Donna Lefebvre. TR 41. Plaintiff and vocational expert ("VE"), Chelsea Brown, appeared and testified. *Id.*

On December 4, 2023, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 24–35. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2. The claimant has not engaged in substantial gainful activity since September 9, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: right hip arthritis and migraine headaches (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except Claimant could lift up to twenty pounds occasionally and ten pounds frequently. Claimant could stand and walk for up to six hours and sit for up to six hours in an eight-hour day with normal breaks.

> > Claimant could occasionally climb ramps or stairs, and never climb ladders, or scaffolds. Claimant could occasionally stoop, kneel, crouch or crawl and never balance, as defined in the Selected Characteristics of Occupations of the DOT. Claimant can perform jobs that did [*sic*] not require concentrated exposure to extreme non-weather-related heat or cold, or excessive vibration. Claimant could perform jobs that did [*sic*] not require work around unprotected heights.
>
> 6. The claimant is capable of performing past relevant work as a claim's examiner and auditor, separate and composite job. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2021, through the date of this decision (20 CFR 404.1520(f)).

TR 26–27, 29, 34.

On January 23, 2024, Plaintiff timely filed a request for review of the hearing decision. TR 178–80. On November 6, 2024, the Appeals Council issued a letter declining to review the case (TR 8–13), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir.

1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

5

sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health*

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

*& Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

    **C.**    **Plaintiff's Statement of Errors**

Plaintiff contends that the non-disability determination lacked substantial evidence because the ALJ erred by failing to (1) adequately assess Plaintiff's mental limitations, thus failing to include the limitations in the Residual Functional Capacity; and (2) perform an 11.02 Listing analysis of Plaintiff's migraine headaches. Docket No. 10-2, pp. 9–10. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be

7

Case 2:25-cv-00001   Document 14   Filed 06/12/25   Page 7 of 18 PageID #: 752

reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

## 1. Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ improperly excluded Plaintiff's medically documented psychological limitations in the RFC without an explanation, biasing the Vocational Expert's (VE) testimony and restricting judicial review. Docket No. 10-2, pp. 12–17.

Defendant responds that the ALJ considered the mental limitations in combination with Plaintiff's severe physical impairments such that discounting the alleged psychological limitations was supported by sufficient, persuasive evidence in the record. Docket No. 12, pp. 4–8.

Plaintiff replies that the ALJ failed to create a narrative explanation in her decision to omit mental limitations from the RFC, preventing the reviewing Court from understanding the logic and reasoning behind the ALJ's decision. Docket No. 13, pp. 1–2.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing

8

Case 2:25-cv-00001    Document 14    Filed 06/12/25    Page 8 of 18 PageID #: 753

> basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for her past relevant work as a claim's examiner and auditor, separate and composite job. TR 34. The ALJ explained:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except Claimant could lift up to twenty pounds occasionally and ten pounds frequently. Claimant could stand and walk for up to six hours and sit for up to six hours in an eight-hour day with normal breaks. Claimant could occasionally climb ramps or stairs, and never climb ladders, or scaffolds. Claimant could occasionally stoop, kneel, crouch or crawl and never balance, as defined in the Selected Characteristics of Occupations of the DOT. Claimant can perform jobs that did [*sic*] not require concentrated exposure to extreme non-weather-related heat or cold, or excessive vibration. Claimant could perform jobs that did [*sic*] not require work around unprotected heights.

TR 29.

In so finding, the ALJ considered all reported symptoms to the extent the symptoms were consistent with objective medical evidence from the medical opinion(s) and prior administrative medical finding(s). TR 29–33. Specifically, the ALJ stated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

TR 29–30.

9

Furthermore, the ALJ contemplated how Plaintiff's response to treatment impacted her symptoms and functioning, stating:

> The claimant also alleges she is unable to work due to migraine headaches. She is unable to sit in front a computer [*sic*] for eight to 10 hours per day and not be able to get up and move due alleviate [*sic*] her pain from her impairments. She has difficulty focusing due to pain and side effects from medication. She has about 15 migraines per month that can last for days. When she has migraines, she takes her medication, and has to lie down (Hearing Testimony). As for the claimant's alleged migraines, medical records indicate a history of headaches and treatment with appropriate medication. Although the claimant has reported worsening symptoms, she has also reported improvement with medication. In July 2023, the claimant reported that there was nothing left to be done with migraines. Julie B. Fossett, APN discussed seeing a headache specialist, which the claimant declined and chose to continue following with neurology. In July 2023, treatment notes indicated migraines were stable (Exhibits 3F, 5F, 8F, 9F/32, 34, 10F, and 14F).

TR 32.

After finding that the opinions of the State agency mental health consultants were persuasive, the ALJ also considered whether Plaintiff's allegations that her physical condition is impairing her mental capabilities is consistent with Plaintiff's daily activities and treatment history, stating:

> The undersigned has also considered the opinions of the State agency mental health consultants (3A and 5A). The undersigned finds the opinion at Exhibit 3A more persuasive, as it is more consistent with the opinion of Mr. Hardison who personally examined the claimant. The claimant has reported some problems with memory and concentration, but she has also reported the ability care [*sic*] for her boyfriend's son, perform personal care needs, care for her cats, prepare simple meals, perform some household chores, drive, go out alone, manage finances, read, watch television, use email, and video chat. She has some difficulty if she has pain or brain fog with written instructions. She is able to follow spoken instructions, but she has to take notes. She is also able to shop in stores, by computer, or by phone. She completed the Adult Function Reports. Treatment notes have also shown normal recent and remote memory as well as a normal attention span.

TR 33.

> [E]ven though the claimant's impairments are considered capable of producing some of the alleged symptoms, they nonetheless are not limiting to the degree alleged based on the medical evidence of record. Specifically, the undersigned concludes that the evidence falls short of corroborating any fully debilitating impairment or combination thereof. . . .

TR 33.

While medical professionals documented Plaintiff's alleged symptoms, the ALJ must weigh the credibility of these documents and symptoms and should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F. 2d 524 (6th Cir. 1992). Here, Plaintiff's reported daily activities and medical professional psychiatric evaluations contradicted the severity of the alleged symptoms, prompting the ALJ to discount the mental limitations not supported by medical evidence. *See* TR 33.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported symptoms and level of activity, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations such that she can perform her past relevant work. TR 29, 34. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more. Because the RFC was properly determined, the ALJ appropriately presented the functional limitations contained in that RFC when questioning the VE at step four. TR. 64–65. Therefore, the VE's testimony is credible. TR 34.

**2. Meeting or Equaling a Listing**

Plaintiff contends that her migraine headaches are equivalent to an 11.02(B) or 11.02(D) listing, and that the ALJ was required to evaluate an 11.02 listing analysis of her migraines in the

opinion. Docket No. 10-2, pp. 20–23; *see e.g.*, SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Specifically, Plaintiff maintains that the ALJ erred by failing to perform an 11.02 listing analysis and provide a meaningful step three analysis. Docket No. 10-2, p. 20.

In response, Defendant argues that the ALJ is not obligated to exhaustively list each consideration that factored into the step three determination, and that the ALJ's statement that Plaintiff's impairments were not equivalent to a listed impairment is sufficient to articulate that finding. Docket No. 12, pp. 10–11, citing *Bledsoe v. Barnart*, 165 F. App'x 408, 411 (6th Cir. 2006). Therefore, Defendant maintains that the ALJ need not expand on her reasoning at step three when "'[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.'" *Id.* at 11, citing SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).

Furthermore, while performing the step three determination, Defendant asserts that "no acceptable medical source observed one of Plaintiff's migraine events" to "provide a detailed description" and that Plaintiff's reported description was not supported by medical evidence. *Id.* at 11–12. Thus, the ALJ did not have credible evidence to support finding Plaintiff's migraines constituted a listing. *Id.* at 11.

### a. Plaintiff's Proposed Listing

With regard to Listing 11.02, "Epilepsy," the Code of Federal Regulations states:

> Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
> . . .
> (B) Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or
> . . .
> (D) Dyscognitive seizures, occurring at least once every 2

weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

    (1) Physical functioning; or
    (2) Understanding, remembering, or applying information; or
    (3) Interacting with others; or
    (4) Concentrating, persisting, or maintaining pace; or
    (5) Adapting or managing oneself.

20 CFR § 404, Subpt. P, App. 1, Listing 11.02 (internal citations omitted).

While Plaintiff admits migraine headache disorders are not a *per se* epilepsy listing, for Listing 11.02(B), Social Security Ruling 19-4p ("SSR 19-4p") states:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B [*sic*], we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Similarly, for Listing 11.02(D), SSR 19-4p states:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D [*sic*], we consider the same factors we consider for 11.02B [*sic*] and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or

adapting or managing oneself.

*Id.*

Plaintiff claims that despite taking her prescribed medications, she has "15-20 headaches per month lasting almost the whole day" with "nausea/photophobia/phonophobia." Docket No. 10-2, pp. 21–22. She experiences negative side effects from her medication, including "nausea, constipation, fatigue, ringing in the ears, [and] brain fogginess." TR. 48. Given the frequency of her migraines while medicated, the medication's side effects, and her loss of functioning, Plaintiff argues that she raised a "substantial question" as to whether her migraines are equivalent to an epilepsy listing. Docket No. 10-2, p. 21, citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990). Since Plaintiff raised a "substantial question," she contends that the ALJ should have explained in the opinion why the migraines did not meet the 11.02 Listing standards. *Id.* at 22.

Defendant asserts that when the ALJ performed the listing analysis, no acceptable medical source observed one of Plaintiff's migraines to provide a detailed description of the event for the listing analysis. Docket No. 12, p. 11.

Plaintiff replies that an acceptable medical source did witness one of Plaintiff's migraine events and documented the associated phenomenon. Plaintiff argues that her treating physician, Dr. Cara Pittari, wrote a medical report in February 2019 detailing Plaintiff's headache event. Docket No. 13, pp. 2–3.

### b. Listing Analysis Standards

Per step three, the ALJ must determine whether a claimant's impairments are equivalent to a listing, but "20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue." *Bledsoe*, 165 F. App'x at 411. Instead, the "ALJ

14

should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Id.* This Court does not recognize a heightened articulation standard for step three determinations, so by analyzing Plaintiff's medical records and inquiring about her daily activities, the ALJ made specific factual findings to support the conclusion that Plaintiff's migraine headaches are not equivalent to an 11.02 listing. *See id.*; TR. 28–33.

As can be seen, SSR 19-4p explicitly states that the ALJ must consider whether Plaintiff's migraines impose limitations in functioning, such as the migraines interfering with Plaintiff's daily activities. As required, the ALJ assessed Plaintiff's limitations in the four broad functional areas, otherwise known as "paragraph B" criteria, and found at most mild limitations. TR 27–29. While Plaintiff has no limitations in the second and fourth functional areas (i.e., interacting with others and adapting or managing oneself), Plaintiff has "mild" limitations with the first functional area, understanding, remembering or applying information, and the third functional area, concentrating, persisting or maintaining pace. TR 28–29.

However, despite Plaintiff's testimony that she has difficulty concentrating due to brain fog and memory and comprehension issues, the ALJ found that her Adult Function Reports and treatment notes contradict the severity of these issues. TR 28. For instance, Plaintiff independently cares for herself, using calendar and phone reminders, and positions her medication bottles to indicate whether she has taken her medication. TR 28. Daily, Plaintiff can manage her finances, read, email, videochat, watch television, and shop in stores, online, and by phone. TR 28. Her Adult Function Reports and treatment notes indicate that Plaintiff has a "normal" recent and remote memory and attention span, where she completed serial 3s and 7s. TR 28. Given the medical evidence and Plaintiff's contradictory testimony, the ALJ properly discounted Plaintiff's alleged mental limitations and found that her migraine headaches did not

15

meet a listed impairment. TR 29.

Furthermore, at step four, the ALJ acknowledged that while Plaintiff's impairments could have reasonably caused some of her alleged symptoms, the reported "intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence." TR. 34. The ALJ considered the medical opinions of Julie Fossett, N.P. (TR. 627), consultative examiner Dr. Carola Cistola (TR. 521–28), psychological consultative examiner Stephen R. Hardison, M.A. (TR. 517–20), and State agency medical consultants (TR. 73–81, 83–92). However, she only found the opinions from the psychological consultative examiner and State agency medical consultants persuasive. TR. 34. From those opinions, the ALJ found that Plaintiff's reported symptoms were not supported by medical evidence. *Id.* Therefore, the ALJ did consider whether Plaintiff's migraine headache disorder was equivalent to an 11.02 listing, and her conclusion that the disorder was not equivalent is supported by substantial evidence. *See* TR. 29; *Bledsoe*, 165 F. App'x at 411.

The ALJ appropriately considered the medical evidence regarding Plaintiff's migraine headaches and related symptoms and determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. TR 27–29. Plaintiff's argument that the ALJ failed to consider an 11.02 listing analysis is unavailing.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a listing, the ALJ's decision must stand.

### c. Acceptable Medical Sources

To qualify for an 11.02 Listing, "a detailed description from an [acceptable medical source] of a typical headache event" must exist for review. SSR 19-4p, 2019 WL 4169635, at *7

(Aug. 26, 2019). Without an acceptable medical source recording a "description of a typical migraine event, the side effects of her medications, and, most importantly, an opinion concerning the limitations in functioning associated with her migraines," Plaintiff's argument fails. *See Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023). Self-reported symptoms do not constitute a description of a typical headache event for the purposes of SSR 19-4p. *See e.g., id.*

While Defendant argues that "no acceptable medical source observed one of Plaintiff's migraine events" (Docket No. 12, pp. 10–11), Plaintiff replies that an acceptable medical source did witness one of her migraines (Docket No. 13, p. 2). She argues that her treating physician, Dr. Cara Pittari wrote a medical report in February 2019 detailing Plaintiff's headache event. *Id.* at 2–3. In the report, Dr. Pittari wrote that Plaintiff admitted to frequently experiencing lightheadedness, headaches, and pain while commenting on light sensitivity and tiredness. TR. 418. However, in the same report, Dr. Pittari stated that Plaintiff was "alert and oriented" with her comprehension, gait, and language intact. *Id.* Therefore, first, the report did not describe an actual migraine event, only the common symptoms Plaintiff expressed to her medical provider; second, even those symptoms that Plaintiff described to Dr. Pittari do not support Plaintiff's argument that her headaches equal a listing. *See* SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

As discussed, there is substantial evidence supporting the ALJ's determination that Plaintiff's migraine headaches did not equal an 11.02 listing. *See* TR. 29; SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Additionally, the credible opinions stating Plaintiff was at most mildly limited in the first and third functional areas further support the ALJ's conclusion, indicating that there was substantial evidence to find that the Plaintiff did not meet a listing

17

Case 2:25-cv-00001   Document 14   Filed 06/12/25   Page 17 of 18 PageID #: 762

equivalence. TR. 27–29.

## IV. CONCLUSION

For the reasons discussed above, the undersigned orders that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

IT IS SO ORDERED.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**